## COUNTY OF PENOBSCOT.

### † HALL *versus* PICKERING *&* als.

A company was allowed five years, under their charter, to construct their railroad, by making and filing their location with the county commissioners of the counties through which it passed, on or before Dec. 31, 1850. After they had made a survey, and staked out the track across plaintiff's land, but before it was accepted and filed, the company purchased of him, six rods in width of his land, and took a deed of the same, in which it was described as "covered by the location of their said railroad, or that may finally be covered by such location." Afterwards, under the authority of the legislature, a further time was granted to the company, to file their location, and they made a different one across the plaintiff's land, and accepted and filed the same, on which the road was constructed : —

*Held,* that the company obtained no rights in such new location *under the deed.*

Hall *v.* Pickering.

The constitution prohibits the taking of private property for public use without just compensation.

By the provisions of c. 81, R. S., railroad companies are authorized to take a certain quantity of the land of individuals, and prescribes the mode of fixing the compensation by the county commissioners, on the application either of the owner of the land or of the corporation.

An omission, on the part of the owner of the land, to call on the county commissioners to assess his compensation, will not preclude him from maintaining an action of *trespass quare clausum* against the company, after they have *taken* his land, without making compensation.

Nor will an omission, by the corporation, to make the compensation in the way provided, after taking possession of an individual's land, work a forfeiture of their rights under their charter, to enter upon the land, and have an exclusive occupation *temporarily*, as an incipient proceeding to the acquisition of title to, or an easement in it.

While the law, under this constitutional provision, allows a *reasonable time* to the railroad company to make the compensation, after *such an exclusive occupation*, still, when the company takes this exclusive occupation under a claim of right in fee, as by a deed from the owner, when, in fact, no such right exists, no *reasonable time* is allowed for making the compensation, and an action of trespass lies against them, by the owner, for all the damages suffered by it.

On Report from *Nisi Prius*, APPLETON, J., presiding.

Trespass *quare clausum.*

This action, commenced on July 25, 1853, is against two of the directors of the Penobscot & Kennebec Railroad Company, and the two contractors for building their road.

The defendants pleaded the general issue, and, by way of brief statement, justified their acts as servants of that corporation.

The acts complained of were done by the contractors, under the direction of the directors, in the construction of the railroad over the land of the plaintiff, on June 2, 1853, and at various times between that and the date of the writ.

Under their charter, the company were required to be organized, and the location of their road, by actual survey, filed with the county commissioners of the counties through which it passed, on or before Dec. 31, 1850, or the charter would be void.

On the last day of Dec., 1850, a location of said road was filed with the county commissioners, which location

crossed the plaintiff's land, and was staked out some time previously, beginning westerly on the land of Isaac Temple, and ending easterly at the land of Henry Crocker.

On Dec. 5, 1850, plaintiff, for a valuable consideration, made, executed and delivered to the Penobscot & Kennebec Railroad Company a deed, in which the description was as follows: — "A certain parcel or strip of land, six rods wide, and about one hundred and ten rods long, being the same land belonging to me, covered by the location of their said railroad, or that may finally be covered by such location, in the town of Hermon, beginning westerly at the land of Isaac Temple, and ending easterly at the land of Henry Crocker, with a right to pass over my land during the construction of said road, and provided the road be made thereon within five years."

The Legislature, by an Act approved June 3, 1851, extended the time for the company to file the location of the road, to Dec. 31, 1852.

Under this Act, a new location was filed, and it crossed the plaintiff's tillage land, and near his house about twenty-four rods from the first location.

On the second location the road was afterwards made, and this is where the acts complained of were done.

The evidence of plaintiff tended to prove, that no acts were done by the company or its contractors in opening or constructing the road, until June, 1853, when they entered upon the land and prosecuted the work of constructing the road.

No question arose as to the organization of the company, and that two of the defendants were directors, and that the other two were contractors, and directed the acts complained of, to be done.

The case was taken from the jury in order to settle the legal rights of the parties, the question of damages, if any, to be settled by a jury afterwards.

*Rowe & Bartlett*, for defendants.

The land which passes by the deed is, that which "may

be finally covered by such location, and on which the road should be built in five years." The first location was not final. The company never entered to take possession of the land covered by it. When the road was made, the power of selection was finally exercised and the right of appropriation exhausted.

But if the company did not acquire title to that taken, by the deed, they have a right of way over it, by charter and by the statute, and plaintiff has his remedy for damages by application to the County Commissioners.

*A. W. Paine,* for plaintiff.

1. Under the deed the defendants cannot justify their doings. It did not pass the title to this new track thus located under a new law, after the deed was made and after a legal location had been made under the law then in force. The deed was made with reference to the charter which provided for a location on or before Dec. 31, 1850. At the time it was made there was the actual survey. In giving construction to the deed these facts become essential.

The location then made was the one referred to. The word " finally," in the description, has its meaning; it has reference to something then in progress.

In making the deed, the parties had reference to matters as then in progress, and in the terms, " the final location," they referred to the *final approval by the directors* of the survey already made. *Grover* v. *Drummond,* 25 Maine, 185.

2. It is a well established legal principle, that " a contract made under a law, is presumed to be made with reference to it. The law is a part of the contract." *Blanchard* v. *Russell,* 13 Mass. 16. The deed should then be construed as if it contained the whole charter within its descriptive part.

The new statute can give it no construction which it had not before. *King* v. *Dedham Bank,* 15 Mass. 454.

3. Whenever uncertain premises or rights are granted, with the right of subsequent location, the first *legal* de-

termination or location of those rights or premises, determines forever its extent and bounds. *Farrar* v. *Cooper*, 34 Maine, 394.

A legal location was here made on Dec. 28, 1850, and thenceforward the deed was satisfied.

4. Nor does the new statute, passed for the purpose, give the company the right of changing the location. It merely extends the time when it may be filed. *B. & P. Railroad Co.* v. *M. Railroad Co.*, 1 Gray, 340.

5. But if, from the language of the Act, any such meaning may be made out, it is then unconstitutional as impairing the obligation of contracts. *Dartmouth College Case*, 4 Wheat. 518; *Foster* v. *Essex Bank*, 16 Mass. 271.

Nor can the defendants justify under their proceedings if the deed is void. The company have claimed to be acting under the deed, and, in virtue of it, seized the land, cut down his trees, dug up his soil and fully completed the road, and taken no steps whatever to pay for it, and it is too late to turn round now and set up a right under law. This branch of the defence is disposed of by the case of *Cushman* v. *Smith*, 34 Maine, 247.

No question of reasonable time under the facts of the case can possibly arise. They never intended to pay. *Winslow* v. *Gifford*, 6 Cush. 327.

On no ground set up in defence are defendants justifiable in making the road across plaintiff's land, and are liable to the whole damage done by them.

TENNEY, J. — The action is trespass *quare clausum*, against two of the directors of the Penobscot & Kennebec Railroad Company, and two of the contractors for building the road of that company. The writ is dated July 25, 1853. The defendants plead the general issue, and justify the acts complained of, as the servants of the company.

The defence principally relied upon is under a deed from the plaintiff to the Penobscot & Kennebec Railroad Company, given upon the condition that the road be made upon

the land described within five years.  The premises in the deed are, "a certain parcel or strip of land six rods wide, and about one hundred and ten rods long, being the same land belonging to me, covered by the location of their said railroad, or that may be finally covered by such location, in the town of Hermon, beginning westerly on the land of Isaac Temple and ending easterly at the land of Henry Crocker."

The deed being of land covered by a track surveyed for a railroad, the parties must have contemplated an immediate transfer of the land, in order that the road should be constructed.  This condition, therefore, was subsequent.  *Hayden* v. *Stoughton,* 5 Pick. 528 ; 4 Kent's Com., Lecture 56, p. 121.  The estate having vested in the grantees, it cannot revest in the grantor or his heirs, unless by a re-conveyance, or by a forfeiture under the condition and a re-entry.  Shep. Touch. 154 ; Litt. § 351 ; Co. Litt. 218, (b) note 133.

At the date of the deed, a survey of the track, caused by the directors, and staked out, before Dec. 1850, crossed land belonging to the plaintiff, from Temple's line on the west, to the land of Crocker on the east ; and the survey of the entire railroad track from Waterville to Bangor, including that over the plaintiff's land just described, was made the location of the road, by the directors, according to their records, which location was duly filed in the office of the county commissioners of the respective counties on Dec. 31, 1850.

Under the authority of an Act of the Legislature, passed June 3, 1851, c. 453, to extend the time in which the location of the line of the Penobscot and Kennebec Railroad may be filed, to one year, from the last day of December next after, a new location of the road was made by the directors on Dec. 30, 1852, which is treated in argument by counsel on both sides, as having been filed the next day, in the office of the county commissioners.  The new location was that on which the road was afterwards constructed, and in building of which, the trespass complained of was com-

mitted; and was about twenty-four rods from the location first made.

The defendants' counsel insist that the land on which the road was constructed, passed by the deed, under the clause therein, " or that may *finally* be covered by such location."

A deed in legal form, and appropriate to convey real estate, properly executed, acknowledged and recorded, will transfer to the grantee, the grantor's title to the land, which is therein described with such precision, that no doubt can exist touching its identity. R. S., c. 91, § 1. If the deed describes a certain quantity of land, to be taken, in a manner which is legal, and clearly described, from another and a larger quantity, the deed is operative on its delivery, to pass the title to the portion intended to be conveyed, in common and undivided, with the residue of the larger quantity. A designation of the land made afterwards according to the provisions in the deed, will be such a division, that the grantee will hold that so designated in severalty. And the bounds thereof, first established according to the terms of the deed, become unalterably fixed as the true boundary. *Grover* v. *Drummond*, 25 Maine, 185; *Farrar* v. *Cooper*, 34 Maine, 394.

At what time did the title to the land described in the deed from the plaintiff first become perfected in the Penobscot and Kennebec Railroad Company, and where was that land?

The deed being to the company, and of land covered by the location of the railroad of the company, after the survey of the track, with the condition that the road should be made thereon within five years, it must have had reference to the charter of that road. At the date of the deed, the directors of the company had caused the survey of the track of the road, but it had not then become the location by their vote and the record thereof, according to the requirement of the charter. The language used in the first clause of the description to specify the land, indicates that the "location of their railroad," was that then existing, and

not that which was to become such at a future time. It would seem not to be a far-fetched or absurd construction, under the facts disclosed by the case, to consider the deed as then operative, to pass a title to that part of the plaintiff's land covered by the survey, which had then been made and staked out. If so, there could not be any change afterwards of the land under the same deed. Whether it would have such operation or not, we do not now decide, inasmuch as by giving effect to the other clause, " or that may finally be covered by such location," under the facts of the case, we come to the same result.

The location, which was made according to the actual survey of the route, and filed with the county commissioners on Dec. 31, 1850, was the only location which could be legal, and save the forfeiture of the charter, after the expiration of that day. The power of further location had ceased. The rights of the plaintiff and the company, by the charter and the deed, had become fixed, and could not be changed without a new contract of some kind. Could the plaintiff object to the company's taking full possession of the land as their own, and for any purpose, without reference to the construction of a railroad, and continue that possession, and make improvements thereon, of any description, at pleasure, unless, after the lapse of five years from the date of the deed, the road should not be made, and he should reënter and hold the land as forfeited? If the location, recorded as made on Dec. 28, 1850, was not the *final* location, the day after it was filed with the commissioners, was the location made and filed in 1852, immediately after it was made and filed, any more so? And if the principle contended for by the defendants' counsel is correct, what they treat as the *final* location, they may postpone indefinately, provided they can have an extension of the time from the Legislature, in which to perform those acts.

The last location, which the company, by their charter, could effectually make, as their charter was at the date of the deed, was the final location. The land covered thereby

was that which became vested in the company; and, according to well established principles, their rights could not be taken away by any subsequent legislation. The plaintiff parted with the title to the land, covered by the location of the survey, and of that which was finally covered by such location, one being identical with the other. And no power existed in the Legislature, directly or indirectly, to substitute for this land, a different parcel from that owned by him. No attempt was made by the Legislature to do so; for the time to make a new location being enlarged only by the Act of 1851, could have no effect to essentially change the premises of a deed already made and delivered. The defence, under the deed, fails.

It is contended by the defendants, that if the company did not acquire title to the land on which the road was constructed by the deed, they have the right of way over it, by their charter, and the general statute, on the subject of railroads; and the plaintiff has his remedy for damages by application to the County Commissioners.

By the general statute, and by the charter, the plaintiff could have had his damages estimated by the County Commissioners, and demanded security for the payment of the same. It does not appear that he has made any attempt to procure an estimation in this mode. Was this an indispensable pre-requisite to the maintenance of an action of trespass against the company, or its agents, if in other respects such action could be sustained?

Chapter 81, § 3, of the R. S., provides that the damages to be paid by such corporation for any real estate taken, as is therein provided, when not otherwise agreed upon, shall be ascertained and determined by the County Commissioners, &c. By § 6, of the same chapter, the application to the County Commissioners for an estimation of damages may be made by the corporation, or the owner of the real estate taken. The statute does not declare the consequences of an omission in both parties, to make the application. Such omission in the owner is not declared to be a waiver of the

right to hold a corporation responsible, if they should appropriate the land, beyond the authority to do so, secured by the statute and the constitution, which forbids the taking of private property for public uses, without just compensation. Constitution, Art. 1, § 21. Neither does this omission in the corporation work a forfeiture of all their rights, secured by a charter like the one of this company, to enter upon the land of an individual, and have an exclusive occupation of the same " temporarily as an incipient proceeding to the acquisition of a title to it or an easement in it." The right to have an estimation made by the Commissioners, being secured to the owners of the real estate occupied by the corporation, and by the corporation also, the latter cannot take the land, in the sense of the section of the constitution referred to, without just compensation, because the owner and the corporation have been in the like fault, to take measures to ascertain the damages. The owner of the real estate has lost no rights in the same, by that omission; and the corporation may take the incipient steps to acquire an easement in the land, notwithstanding the failure to obtain from the Commissioners an estimation of the damages, at the earliest time after the location.

The counsel for the plaintiff, having treated the second location as filed with the Commissioners on Dec. 31, 1852, the company are not interested to controvert this fact, because if it were not so filed, the charter was forfeited and all rights thereunder are extinct. The location, therefore, may be considered as made on that day, effectual, and it could not cease to be so, by the 4th § of c. 41, of the statutes of 1853, which was passed several months subsequently. But the filing of the location with the Commissioners, under such a statute as that last referred to, is considered as a temporary occupation of the land, for the purpose of acquiring an easement in it, as an incipient proceeding. And when the company in this case, after having surveyed the whole route, and staked it out, made it the location, and filed it as such with the commissioners, they

must be treated as having taken the temporary occupation of the land in the same manner. The object must have been similar, notwithstanding it may have been done at that particular time, rather than at a period some later, to prevent a forfeiture of the charter.

No acts were done by the company, or their agents, in opening and constructing the road, after the filing of the location with the Commissioners on Dec. 31, 1852, till June following, and on the 20th day of that month, and not before, but since that time, they entered upon the land by their servants and prosecuted the work of constructing the road. It is therefore contended, that the case is brought within the principle of *Cushman* v. *Smith*, 34 Maine, 247. It was held in that case, that if the compensation is not made within a reasonable time, after the land has been exclusively occupied, the right to continue that occupation will become extinct, and the occupants will be trespassers, and liable to be prosecuted as such. The exclusive occupation being authorized only as a part of the proceedings for the acquisition of title, when it becomes manifest, by an unreasonable delay, that the avowed purpose is not the real one, or that, if real, it has been abandoned, the measures permitted for that purpose will be no longer authorized.

While the proprietors of a railroad are in exclusive occupation, and the delay to take the proper and the legal measures to obtain the title to the land over which it passes, or an easement in it, is evidence that they do not design to take those measures, and their continued occupation, therefore, becomes a trespass, certainly that occupation, under the claim of title in fee simple, to the land itself, is not authorized if they have no such title. If the company desire no time to take the measures, permitted under the statute to acquire a right to an easement in the land, they are not entitled to such time, as would be reasonable, if they wished to avail themselves of the provision of the statute to obtain rights upon the land, to which they set up no title. In such a case, the right to time at once ceases. So long as they hold

such a position, a delay in the owner of the land, to take steps to recover compensation for his land, is useless to the company, and the time, which would be reasonable, if they took the occupation of the land as that of another under their chartered rights, had already terminated when the claim of entire title was made.

It appears, from the case, that reliance was entirely upon the deed for the defence, and that failing, the defendants cannot object to the maintenance of this action, on the ground that a reasonable time has not elapsed in which the company could make compensation, or a tender of it, from the commencement of the occupation, before the institution of the suit.

The continuance of the occupation being unauthorized in the company, their servants can have no greater rights of occupation. Those who were the immediate cause of the injury to the plaintiff, in the acts complained of, and the directors who authorized their acts, are alike liable, and, by the agreement of the parties, the case is to stand, that the damages may be assessed by a jury.